Peter L. Carr, IV (SBN 256104)
pcarr@thePLClawgroup.com
Na'Shaun L. Neal (SBN 284280)
nneal@thePLClawgroup.com
Lauren K. McRae (SBN 331296)
lmcrae@thePLClawgroup.com
**PLC LAW GROUP, APC**
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
Telephone:   (310) 400-5890
Facsimile:    (310) 400-5895
Attorneys for Plaintiff
Eduardo Luna

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

EDUARDO LUNA
        Plaintiff,

vs.

COUNTY OF LOS ANGELES; KYLE
DELUCA; LOUIS TREJO-VIDES;
SERGEANT SHELTON;
LIEUTENANT SKAGGS; DEPUTY
MUTON; DEPUTY O'CONNELL; and
DOES 1 through 10 inclusive,
        Defendants.

Case No.

**COMPLAINT**
**DEMAND FOR JURY TRIAL**

1. First Amendment Retaliation (42 U.S.C. § 1983)
2. Excessive Force (42 U.S.C. § 1983)
3. Cruel and Unusual Punishment (42 U.S.C. § 1983)
4. *Monell* and Supervisor Liability (42 U.S.C. § 1983)

---

1

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.      This case challenges the excessive force, cruel and unusual punishment, and First Amendment retaliation that deprived the Plaintiff Eduardo Luna of their federal and state rights. Plaintiff Eduardo Luna complains of Defendants County of Los Angeles, Sheriff Alejandro Villanueva, Deputy Kyle Deluca, Deputy Louis Trejo-Vides, and Does 1 through 10, inclusive, as follows:

**VENUE AND JURISDICTION**

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1334, and arises under 42 U.S.C. §§ 1983 and 1988.  State law claims for relief are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Venue is proper in this Court because the unlawful acts and practices alleged herein occurred in the County of Los Angeles, California, which is within this judicial district pursuant to 28 U.S.C. § 1391.

**CLAIMS STATUTE REQUIREMENT**

3.      On or about July 1, 2022, Plaintiff filed a timely Governmental Claim for Damages with the County of Los Angeles. On or about September 27, 2022, the County of Los Angeles denied said Claim for Damages.

**PARTIES**

4.      At all relevant times herein, PLAINTIFF EDUARDO LUNA was and is a Chicano attorney and resident of the State of California in the County of Los Angeles.

5.      Defendant COUNTY OF LOS ANGELES (hereinafter referred to as "COLA") is, and at all times in this complaint was, an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COLA possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LOS ANGELES SHERIFF'S DEPARTMENT (hereinafter referred to as "LASD") and its tactics, methods, practices, customs and usages.

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

6.      Defendant DEPUTY KYLE DELUCA is, and at all times in this Complaint was, an individual employed by COLA and/or its subsidiaries as a supervisory law enforcement officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, COLA.

7.      Defendant DEPUTY LOUIS TREJO-VERDES, and at all times in this Complaint was, an individual employed by COLA and/or its subsidiaries as a supervisory law enforcement officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, COLA.

8.      Defendant SERGEANT SHELTON is, and at all times in this Complaint was, an individual employed by COLA and/or its subsidiaries as a supervisory law enforcement officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, COLA.

9.      Defendant LIEUTENANT SKAGGS is, and at all times in this Complaint was, an individual employed by COLA and/or its subsidiaries as a supervisory law enforcement officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, COLA.

10.   Defendant DEPUTY MUTON is, and at all times in this Complaint was, an individual employed by COLA and/or its subsidiaries as a supervisory law enforcement officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, COLA.

11.   Defendant DEPUTY O'CONNELL is, and at all times in this Complaint was, an individual employed by COLA and/or its subsidiaries as a supervisory law enforcement officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, COLA.

12.   At all relevant times mentioned herein and material hereto, Defendant DOES 1 through 10, described below, engaged in law enforcement as deputies, sergeants, captains, lieutenants, and/or agents of Defendant COLA, duly employed as by the

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

LASD, who acted in the course and scope of their employment at all times relevant to the acts and omissions herein alleged.

13.   PLAINTIFF is informed and believe and thereon allege that each of the Defendants designated as a DOE are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to PLAINTIFF who, therefore, sue said Defendants by such fictitious names. PLAINTIFF will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

14.   Defendants, and each of them, acted under color of law and did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

### FACTS COMMON TO ALL COUNTS

15.   The water service to Plaintiff Eduardo Luna's residence, located at 1341 W. Ave. J4, #205, Lancaster, CA, had been critically terminated by individuals who were attempting to use the service termination as pretext to enter and burglarize the premises. These individuals were threatening Plaintiff and harassing him via phone calls and text messages.

16.   Plaintiff called the LASD Lancaster Station at (661) 948-8466 on Monday, January 3, Wednesday, January 4, and Thursday, January 5, 2022 to report the threats, harassment, and criminal activity. Plaintiff visited the Lancaster Station in-person on January 3, 5, and 6, 2022 for the same reason.

17.   The Los Angeles County Sheriff's Department did not respond to Mr. Luna's requests for assistance.

18.   On the morning of January 6, 2022, the individuals who had been harassing Mr. Luna approached him near his residence. They threatened to attack him, telling him to "shut it" and stop reporting their criminal behavior.

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

19.   At approximately 10:58 am, Mr. Luna called the Lancaster Station to report these criminal threats. He requested service at his residence.

20.   At approximately 11:28 am, the individuals harassing Mr. Luna attempted to assault Plaintiff while he was sitting in his car approximately 200 feet from the residence waiting for Los Angeles County Sheriff's Deputies to arrive.

21.   Plaintiff called 911 to report the assault in progress.

22.   Plaintiff escaped the assailants by deploying pepper-spray, getting out of his vehicle, and running away.

23.   On information and belief, a bystander witness later confirmed that she had seen the assailants and saw Plaintiff waiting for over an hour in his car after calling 911.

24.   Los Angeles Sheriff's Deputies, DEFENDANTS LOUIS TREJO-VIDES and KYLE DELUCA arrived and immediately handcuffed Plaintiff.

25.   Plaintiff objected to and verbally protested the Deputies' actions by asking the Deputy DEFENDANTS what basis there was to question and detain him. Plaintiff criticized DEFENDANT DEPUTIES for failing to comply with LASD training standards and the U.S. Constitution.

26.   Plaintiff informed DEFENDANTS that he had contacted the Lancaster Station over the past several days requesting assistance and service due to ongoing harassment including threatening calls and messages from his assailants. Plaintiff told DEFENDANTS that he had done nothing wrong, that he was the person who called 911 for help while being assaulted, and that he had video recorded the confrontation with the assailants.

27.   Plaintiff never screamed, yelled, threatened, or directed obscenities at the Deputies.

28.   Plaintiff asked the Deputy DEFENDANTS whether their body-worn cameras were activated and recording, and the DEFENDANTS told Mr. Luna that their cameras were recording.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890  F: (310) 400-5895

29.   Plaintiff later learned that DEFENDANTS continually deactivated their recordings throughout their contact with him.

30.   DEFENDANT DEPUTIES LOUIS TREJO-VIDES and KYLE DELUCA tortured Plaintiff by striking him on his head and body.

31.   DEFENDANT DEPUTIES then forced Plaintiff to remain in the back of their patrol vehicle between 11:30 am and 2:30 pm, as the heat was climbing outside, with his jacket zipped up to his neck and a black cotton head covering. Plaintiff complained of dehydration, heat exposure, loss of consciousness, heat exhaustion and need to use the restroom.

32.   DEFENDANT DEPUTIES refused to ensure Plaintiff was hydrated and refused to allow Plaintiff to use the restroom. DEFENDANT DEPUTIES repeatedly tightened Plaintiff's handcuff, causing him to lose feeling in his wrists, hands, and fingers.

33.   Approximately 30 minutes into this detention, DEFENDANTS DEPUTY LOUIS TREJO-VIDES and KYLE DELUCA learned about the aforementioned bystander witness who confirmed that she had seen the assailants and that Plaintiff had been awaiting law enforcement after calling 911. After learning this, DEFENDANT DEPUTIES did not release Plaintiff. Instead, DEPUTY DELUCA told DEPUTY TREJO-VIDES, "We have him cuffed. What does that mean? Let's go off camera."

34.   DEFENDANT DEPUTIES searched Plaintiff's vehicle, belongings, cell phone, wallet, and residence, taking his identification out of his wallet.

35.   Plaintiff begged to be detained in the shade where it would be cooler; requested that his handcuffs be adjusted so that sensation could return to his wrists, hands, and fingers; and asked Deputies to unzip his jacket and remove his head covering so that his body could cool down. DEFENDANTS DEPUTY LOUIS TREJO-VIDES and DEPUTY KYLE DELUCA refused to fulfill or comply with any of these requests.

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

36.   DEFENDANTS DEPUTY LOUIS TREJO-VIDES and DEPUTY KYLE DELUCA continued to adjust Plaintiff's handcuffs tighter, although Plaintiff complained that they were too tight.

37.   DEFENDANTS DEPUTY LOUIS TREJO-VIDES and DEPUTY KYLE DELUCA set their patrol car's heater to its highest setting.

38.   On information and belief, the DEPUTIES LOUIS TREJO-VIDES and KYLE DELUCA knew that detaining Mr. Luna in a hot car for hours without relief equated to a potentially fatal form of torture known as "hotboxing." DEPUTIES LOUIS TREJO-VIDES and KYLE DELUCA taunted Plaintiff by expressing concern for a dog they saw inside of a parked vehicle on the same street.

39.   DEFENDANTS DEPUTY LOUIS TREJO-VIDES and DEPUTY KYLE DELUCA threatened Plaintiff that they could prevent him from further advocacy as a civil rights attorney by falsely charging him with a felony that, if convicted, he would have to report to the California and New York State Bars where he is admitted to practice law. DEFENDANT DEPUTIES laughed at and taunted Plaintiff.

40.   Plaintiff asked DEPUTY O'CONNELL whether the deputies had body-worn cameras activated, and he answered affirmatively.

41.   During the detention of Plaintiff, DEPUTY MUTON arrived on scene and opened one of the patrol car's back doors. Plaintiff begged her, "Don't lose your humanity," asking her to unzip his jacket, remove his head covering, open a window, leave the door ajar, turn on the air conditioner, and/or adjust the air setting so that the heater was not on. Plaintiff told DEPUTY MUTON, "I cannot breathe" and "I'm going to die."

42.   DEPUTY MUTON did not release Plaintiff.

43.   One of the DOE DEPUTIES who arrived on scene requested that Plaintiff sign a citizen's arrest form against his assailants. Plaintiff refused, stating that he did not want to take responsibility for the Deputies' obligations and the assailants' arrest. This upset DEFENDANT DEPUTIES, who continued the "hotboxing" torture of

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff.

44. DEFENDANT DEPUTIES cited Plaintiff for felony use of capsicum spray.

45. DEFENDANT DEPUTIES did not charge the assailants with any crimes.

46. At approximately 2:45 pm, Plaintiff arrived at the Lancaster Station and requested a face mask because DEFENDANT DEPUTIES took his face mask from him. He also requested that deputies wear face masks. DEFENDANT DEPUTIES refused both requests.

47. Los Angeles County District Attorney's Office dismissed Plaintiff's felony charge for discharging capsicum spray.

48. On September 29, 2022, Plaintiff called LASD to report a neighborhood nuisance and requested a Spanish-speaking attorney. DEFENDANT DEPUTY LOUIS TREJO-VIDES and an accompanying DOE DEPUTY arrived at Plaintiff's residence. DEPUTY LOUIS TREJO-VIDES threatened Plaintiff in Spanish by saying that he recalls arresting Plaintiff in January and remembers Plaintiff's address and name. The accompanying DOE DEPUTY stared at Plaintiff's wife's chest for a prolonged, uncomfortable, and unwanted length of time in such a manner as to sexually gratify himself.

49. DEFENDANT DEPUTIES' actions deprived Plaintiff of his rights and liberties and caused Plaintiff physical injuries including abrasions and permanent loss of feeling in his wrists and hands. DEFENDANT DEPUTIES' actions caused Plaintiff physical pain, mental suffering, emotional distress, fear, embarrassment, and other general damages in an amount to be proven at trial.

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**FIRST CAUSE OF ACTION**

**First Amendment Retaliation - 42 U.S.C. § 1983**

**(Against Defendants Deputy Kyle DeLuca, Deputy Louis Trejo-Vides, Deputy Muton, Deputy O'Connell, Sergeant Shelton, Lieutenant Skaggs, and DOES 1 through 10, inclusive)**

50.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

51.   All of the acts of Defendants were done under color of state law.

52.   The acts of Defendants Sheriff Villanueva, Deputy Kyle DeLuca, Deputy Louis Trejo-Vides, Deputy Muton, Deputy O'Connell, Sergeant Shelton, Lieutenant Skaggs, and other involved DOE Deputies 1-10  deprived Mr. Luna of his rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to rights under the First Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by among other things, retaliating against Mr. Luna for exercising his First Amendment right to freedom of speech and expression.

53.   Plaintiff Mr. Luna engaged in constitutionally protected speech on or about January 6, 2022, when he questioned why he was being detained although he had been the person calling for help. He also engaged in constitutionally protected speech when he criticized DEPUTIES DELUCA and TREJO-VIDES for failing to follow LASD guidelines.

54.   In retaliation, DEPUTIES DELUCA and TREJO-VIDES detained Mr. Luna in the back of their patrol car for several hours.

55.   Plaintiff Mr. Luna engaged in constitutionally protected speech when he informed the deputies that he feared he would lose consciousness from heat exposure and made requests including asking that his handcuffs be loosened.

56.   In retaliation, DEPUTIES DELUCA and TREJO-VIDES refused to mitigate

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 F: (310) 400-5895

the harmful conditions of confinement and responded by turning the heat on in the vehicle and tightening Mr. Luna's handcuffs.

57.   DEPUTIES DELUCA and TREJO-VIDES further retaliated by threatening to charge Plaintiff with a felony to endanger his career as a civil rights attorney.

58.   Plaintiff engaged in constitutionally protected speech when he asked DEPUTY MUTON to remember her humanity and to assist him by opening a window or otherwise mitigating the harmful conditions.

59.   DEPUTY MUTON retaliated by closing the patrol car door and leaving Mr. Luna in the same conditions he complained of.

60.   Plaintiff engaged in constitutionally protected speech when he refused to sign a citizen's arrest form for his assailants and said that he did not want to take on a responsibility that ought to be the DEFENDANT DEPUTIES'.

61.   DEFENDANT DEPUTIES responded by keeping Mr. Luna trapped in the hot car as retaliation.

62.   When Plaintiff filed his Claim for Damages in July 2022, he was engaging in constitutionally protected speech.

63.   DEFENDANT TREJO-VIDES and his DOE partner arrived at Mr. Luna's house in September 2022, responding to a request for a Spanish-speaking Sheriff's Deputy in an unrelated report. DEFENDANT TREJO-VIDES used this opportunity to retaliate against Mr. Luna by threatening that he remembered Mr. Luna's name, address, and previous arrest.

64.   Mr. Luna's protected speech and conduct was a substantial or motivating factor in the decision by Defendants Sheriff Villanueva, Deputy Kyle DeLuca, Deputy Louis Trejo-Vides, Deputy Muton, Deputy O'Connell, Sergeant Shelton, Lieutenant Skaggs, and other involved DOE Deputies 1-10 to retaliate. This was demonstrated by, among other things, the fact that deputies made retaliatory threats (detailed above) and Defendants' actions occurred immediately following or soon after protected activities.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 F: (310) 400-5895

65.   As a direct and proximate result of the aforementioned unlawful acts of Defendant Deputies, Mr. Luna sustained and incurred damages for physical injury and pain, emotional injury and pain, mental anguish and suffering, humiliation, embarrassment, as well as harm to his reputation in the community.

66.   Each of the Defendant Deputies were both personally involved and an integral participant in the violation of Mr. Luna's constitutional rights, because each officer was aware of unlawful actions of the other officers, did not object to these violations of Mr. Luna's rights, and participated in the violations by performing police functions, including meaningful participation in the needless arrest and towing.

67.   In doing the foregoing wrongful acts, Defendants Deputy Kyle DeLuca, Deputy Louis Trejo-Vides, Deputy Muton, Deputy O'Connell, Sergeant Shelton, Lieutenant Skaggs, and other involved DOE Deputies 1-10 each acted in reckless and callous disregard for Mr. Luna's constitutional rights. Each wrongful act was willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future similar misconduct.

68.   Plaintiff also seeks attorney fees under this claim pursuant to 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

### Excessive Force– 42 U.S.C. § 1983

**(Against Defendants Deputy Kyle DeLuca, Deputy Louis Trejo-Vides, Deputy Muton, Deputy O'Connell, Sergeant Shelton, Lieutenant Skaggs, and DOES 1 through 10, inclusive)**

69.   Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

70.   This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

71.   As a result of the above described intentional acts and omissions of the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Defendants, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from excessive force, as applied to state actors by the Fourteenth Amendment, was violated when:

a.   DEPUTY DELUCA and DEPUTY TREJO-VIDES immediately handcuffed Plaintiff when responding to his call for help;

b.   DEPUTY DELUCA and DEPUTY TREJO-VIDES deliberately ignored Plaintiff's complaints that the handcuffs were causing his hands to become numb;

c.   DEFENDANT DEPUTIES tightened Plaintiff's handcuffs while aware that they were already causing Plaintiff pain, discomfort, and numbness;

d.   DEFENDANT DEPUTIES struck Plaintiff about his head and body while detaining him;

e.   DEFENDANT DEPUTIES detained Plaintiff in a patrol car in the hot son for approximately 3 hours, turned on heat, refused to permit Plaintiff to use the restroom, and caused Plaintiff to dehydrate;

f.   DEFENDANT DEPUTIES, knowing that Plaintiff could not move his arms because they were handcuffed behind him, refused to unzip Plaintiff's jacket or remove Plaintiff's headwrap;

g.   DEFENDANT DEPUTIES refused to open a window or door for nearly the entire duration of the detention;

h.   DEFENDANT DEPUTIES searched Plaintiff's person and belongings.

72.   Defendants Deputy DeLuca, Deputy Trejo-Vides, Deputy Muton, Deputy O'Connell, Sergeant Shelton, Lieutenant Skaggs, and DOE Deputies 1 through 10, individually and as peace officers, knew their excessive force created a substantial risk of further significant injury and/or the unnecessary and wanton infliction of pain. Defendant Deputies were deliberately indifferent to Plaintiff's serious suffering, causing him extreme pain and suffering.

73.   At no point during any of the foregoing incidents did Plaintiff pose a reasonable threat of violence or danger to the Defendant Deputies or to any other individual. At

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

no point during any of the foregoing incidents did Plaintiff make aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable deputy that Plaintiff had the will or ability to inflict substantial bodily harm against any individual.

74. Defendants Sergeant Shelton, and Lieutenant Skaggs failed to adequately train, supervise and control subordinates, demonstrated acquiescence in the constitutional deprivation of which a complaint was made, and acted with a reckless and callous indifference to the Plaintiff's Fourth Amendment rights.

75. By routinely determining complaints against deputies were unsubstantiated, without investigating or recording said complaints, Defendants Sheriff Villanueva, Sergeant Shelton, and Lieutenant Skaggs advanced a policy of ratifying constitutional violations and encouraging deputies' belief that they can violate the rights of persons, such as Plaintiff, with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

76. Defendant Deputies are liable for Plaintiff's injuries, either because they were integral participants in the excessive force and denial of medical care, or because they failed to prevent these violations. Defendants Sergeant Shelton, and Lieutenant Skaggs are liable for Plaintiff's injuries under a theory of supervisory liability, because they ratified Deputies' excessive force and advanced policies that proximately caused said violations.

77. As a result of the conduct of Defendants, Mr. Luna suffered serious physical pain and injuries to his extremities for which he is entitled to recover damages. Moreover, due to the conduct of these Defendants, Plaintiff has suffered and will continue to suffer severe mental anguish and emotional distress.

78. The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

79. Accordingly, Defendants are each liable to Plaintiff for compensatory and

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

punitive damages, under 42 U.S.C. § 1983.

80.  Plaintiff also seek litigation costs under this claim.

### THIRD CAUSE OF ACTION

**Pretrial Detainee's Claim Re: Conditions of Confinement– 42 U.S.C. § 1983 (Against Defendants Deputy Kyle DeLuca, Deputy Louis Trejo-Vides, Deputy Muton, Deputy O'Connell, Sergeant Shelton, Lieutenant Skaggs, and DOES 1 through 10, inclusive)**

81.  Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

82.  The Plaintiff brings a claim under the Fourteenth Amendment to the United States Constitution against the defendant. DEFENDANT DEPUTIES failed to provide safe conditions of confinement when:

    a.  DEFENDANT DEPUTIES intentionally decided to place Plaintiff in a patrol car in the sun for three hours while handcuffed tightly;

    b.  The conditions under which the DEFENDANT DEPUTIES confined Plaintiff in the car put Plaintiff at risk of suffering serious harm including heat exhaustion, heat stroke, death, and loss of feeling in his arms;

    c.  DEFENDANT DEPUTIES did not take reasonable available measures to reduce the risk of serious harm. Such reasonable available measures including: moving the patrol car into the shade, turning on the air-conditioning, unzipping Plaintiff's jacket, removing Plaintiff's headwrap, opening or cracking a car window, detaining Plaintiff outside of the car, limiting the amount of time that Plaintiff was detained within the car, loosening Plaintiff's handcuffs, or releasing Plaintiff from detention entirely. DEFENDANT DEPUTIES knew or should have known that their failure to take reasonable available measures to decrease the likelihood of heat stroke and/or dehydration and wrist numbness would have consequences; In fact, instead of loosening Plaintiff's handcuffs, DEFENDANT DEPUTIES

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890  F: (310) 400-5895

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  tightened them; and,

2  d. By failing to take reasonable available measures, DEFENDANT DEPUTIES

3  caused Plaintiff to experience dehydration, loss of consciousness, and loss of

4  feeling in his wrists, hands, and fingers.

5  83.  As a result of the conduct of Defendants, Mr. Luna suffered serious physical

6  pain and injuries to his extremities for which he is entitled to recover damages.

7  Moreover, due to the of each of these Defendants, Plaintiff has suffered and will

8  continue to suffer severe mental anguish and emotional distress.

9  84.  Accordingly, Defendants are each liable to Plaintiff for compensatory and

10  punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under

11  this claim.

**FOURTH CAUSE OF ACTION**

**Municipal Liability for Unlawful Custom and Practice – 42 U.S.C. § 1983**

**(Against COLA)**

15  85.  Plaintiff incorporates by reference each and every allegation and fact contained

16  in the preceding paragraphs of this complaint as though fully set forth herein.

17  86.  Defendant COLA is, and at all times herein mentioned has been, a public entity

18  and an incorporated municipality duly authorized and existing as such in and under

19  the laws of the State of California and at all times herein mentioned, Defendant

20  COLA possessed the power and authority to adopt policies and prescribe rules,

21  regulations and practices affecting the operation of the LASD and its tactics, methods

22  practices, customs and usages.

23  87.  At all times herein mentioned, Defendants Sheriff Villanueva, Deputy Kyle

24  DeLuca, Deputy Louis Trejo-Vides, Deputy Muton, Deputy O'Connell, Sergeant

25  Shelton, Lieutenant Skaggs, and DOES 1 through 10, inclusive were employees

26  acting under the COLA's direction and control, who knowingly and intentionally

27  promulgated, maintained, applied and enforced the continuation of policies, customs,

28  practices and usages in violation of the Fourth and Fourteenth Amendments to the

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 F: (310) 400-5895

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890  F: (310) 400-5895

United States Constitution. Said customs, policies, practices and usages at all times herein mentioned required and encouraged the employment, deployment and retention of persons as peace officers, who have demonstrated their brutality, dishonesty, and numerous other serious abuses of their powers as peace deputies for the COLA.

88. The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendant COLA and LASD include, but are not limited to:

a. Defendant COLA and LASD tacitly condones and encourages use of excessive force against citizens;

b. Defendant COLA and LASD tacitly condones and encourages harmful conditions of confinement against citizens;

c. Defendant COLA and LASD tacitly condones and encourages retaliation against citizens who exercise their First Amendment right to protected free speech in the presence of deputies;

d. Defendant COLA and LASD had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful battery, dishonesty and improper tactics, and corruption by LASD employees, including the individual Defendants herein, and refused, with deliberate indifference, to enforce established administrative procedures to ensure public safety, protection of citizens' rights and the Plaintiff's liberty interests;

e. Defendant COLA and LASD refused to adequately discipline individual employees found to have committed similar acts of misconduct as alleged in this Complaint;

f. Defendant COLA and LASD refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by COLA and LASD employees;

g. Defendant COLA and LASD reprimanded, threatened, intimidated, demoted and fired employees who reported acts of abuse by other COLA and LASD

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

employees;

h.      Defendant COLA and LASD covered up acts of misconduct and abuse by COLA and LASD employees and sanctioned a code of silence by and among LASD deputies;

i.      Defendant COLA and LASD failed to adequately supervise the actions of employees under its control;

j.      Defendant COLA and LASD tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct; and

k.      Defendant COLA and LASD fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by January 6, 2022 and thereafter, represented the unconstitutional policies, practices and customs of the COLA and LASD.

l.   The following list exemplifies the aforementioned policies, customs, practices and usages of Defendant COLA and LASD:

i.   The LASD  has a history of deputy misconduct.  An 86-page report by the Los Angeles County Office of Independent Review detailed allegations against LASD deputies of sexual misconduct, false police reports and lies about uses of force in its eleventh annual review.[1]

ii.   The United States Department of Justice has also found that the LASD has a history and practice of misconduct that has led to grand deprivation of constitutional rights.  On April 28, 2015, the LASD and the U.S. Department of Justice entered a settlement regarding allegations of long-standing civil rights abuses.  The U.S. Department of Justice discovered the LASD violated the U.S. Constitution by conducting unconstitutional stops, searches, seizures and excessive

---

[1] Sarah Favot, *Los Angeles Sheriff's Department annual review finds sex, lies and videotape*, WHITTIER DAILY NEWS, Jan. 23, 2014.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

force against minority communities.[2]

      iii.   News reports reveal that the LASD's history of misconduct continues. On April 19, 2018, Daniel Lollis was the victim of excessive force and unnecessarily arrested by LASD deputies during a traffic stop.[3]

      iv.   The unconstitutional practices of the LASD lead to civil rights violations for compliant persons. LASD deputies were caught on video pushing and shoving an elderly Black woman who attempted to comply with a LASD deputy's request that she move from the reserved seating section.[4]

      v.   The unconstitutional practices of the LASD also lead to civil rights violations for persons unaware of why deputies interacted with them.  Nolan Hillis, a developmentally challenged African-American male, was aggressively approached and questioned by deputies, who then applied excessive force when Hillis response was unintelligible.[5]

      vi.   In another case, the Court found in favor of plaintiff and held LASD deputies violated the prohibition of excessive force when they completed an unlawful entry into plaintiff's shack, failed to obtain a warrant, failed to announce themselves and shot the Plaintiffs after one  raised a BB gun in defense.[6]

      vii.   Jury found in favor of inmates that LASD deputies used excessive force to remove the inmates from their cells.[7]

      viii.   LASD's unconstitutional practices extend into First Amendment violations. A 2015 jury trial resulted in nearly $800,000 award for Plaintiffs who filed a lawsuit alleging First Amendment retaliation against the County and Sheriff

[2] Olivia Harris, *Los Angeles County Sheriff Department Makes Long-Standing Civil Rights Settlement*, STOCK WATCH, Apr. 29, 2015.

[3] Bill Melgen, *Lynwood Man Claims LASD Deputies Used Excessive Force During His Arrest*, FOX11 (Aug. 1, 2018, 9:37 PM), http://www.foxla.com/news/local-news/lynwood-man-claims-lasd-deputies-used-excessive-force-during-his-arrest.

[4] *LA Civil Rights Leaders Call for Suspension of Sheriff's Deputies in Video Taped Assault of Elderly Woman*, ELECTRONIC URBAN REPORT, May 20, 2017.

[5] *Hillis v. County of Los Angeles*, No. CV1407186 (C.D.Cal. filed Sept. 15, 2014).

[6] *Mendez v. County of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018).

[7] *Rodriguez v. County of Los Angeles*, No. 10-6342 (C.D.Cal. May 29, 2014).

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

Baca in particular.[8]

ix.   There is also a concern that LASD does not properly address the culture of deputy gangs that contribute to deputy misconduct.  Los Angeles Times reported the LASD continues to fail in properly investigating their deputies for deputy gang groups.  The LASD continues to face criticism over gang-like deputy groups and their failure to root out the agency's subculture of tattooed deputy gangs.[9]

x.   In a wrongful death suit, Judge Michael P. Vicencia highlighted the concern of the deputy gangs by ruling that the LASD must reveal the names of deputies who have matching skull tattoos.  There was a concern that cliques within the LASD promote excessive force.[10]

xi.   The LASD also has a history of retaining deputies that have a known history of misconduct. The Los Angeles Times discovered a secret LASD list that includes 300 deputies with a history of dishonesty and misconduct.[11]

xii.   The LASD also has a practice of re-hiring deputies with a history of misconduct.  LASD Sheriff Alex Villanueva currently faces criticism for the re-hiring of a deputy who has a history of misconduct allegations, is regarded as a member of a deputy gang called the Reapers and has admitted to having a tattoo that represents his membership in said deputy gang.[12]

xiii.   Public reports also state that LASD deputy misconduct claims payouts reflect the growing distrust of law enforcement and public scrutiny concerning

---

[8] Matt Reynolds, "Damages Against Ex-LA Sheriff Rise to $1.1M," Courthouse News, September 9, 2016, https://www.courthousenews.com/damages-against-ex-la-sheriff-rise-to-1-1m/.

[9] Maya Lau, *L.A. County Sheriff's Department Pays Price as Clandestine Deputy Cliques Persist*, LOS ANGELES TIME (Oct. 27, 2018, 5:00 AM), https://www.latimes.com/local/lanow/la-me-sheriff-tattoo-liability-20181027-story.html.

[10] Maya Lau and Nicole Santa Cruz, *Wanting to Know About Deputies' Ink; Judge Says Sheriff's Officials Must Reveal If They Know Names of the Deputies with Matching Skull Tattoos*, LOS ANGELES TIMES, Oct. 26, 2018.

[11] Maya Lau, Ben Poston, and Corina Knoll, *A Times Investigation; A Secret List of Deputy Misconduct*, LOS ANGELES TIMES, Dec. 10, 2017.

[12] Maya Lau and Matt Stiles, *Rehired Deputy Admitted Having Tattoo; Swirling Misconduct Allegations and Claims of Secret Societies Put Sheriff Under Scrutiny Over Reinstatement*, LOS ANGELES TIMES, Mar. 29, 2019.

---

19

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

deputies' use of force.[13]

xiv. The LASD also has a history of insufficient training of their deputies with regard to proper Fourth Amendment standards for reasonable suspicion, probable cause, use of force and incident reporting.

89.   On information and belief, Defendant Deputies attended training programs related to use of force prior to the incident with Plaintiff.

90.   On information and belief, Defendant Deputies attended training programs related to proper detention prior to the incident with Plaintiff.

91.   On information and belief, Defendant Deputies attended training programs related to investigation of crimes and lawful arrest prior to the incident with Plaintiff.

92.   On information and belief, Defendant Deputies attended training programs related to free speech and First Amendment protections prior to the incident with Plaintiff.

93.   Despite Defendant Deputies receiving training that was designed to prevent the conduct described in this Complaint, Defendant Deputies violated Plaintiff's constitutional rights as described in this Complaint.

94.   Prior to the incident, COLA knew that its training program was insufficient to prevent the type of civil rights violations Plaintiff suffered but did nothing to prevent said misconduct.

95.   Furthermore, COLA maintained a custom of ratifying deputy misconduct, as shown by the actions and inactions of Sheriff Villanueva, Deputy Kyle DeLuca, Deputy Louis Trejo-Vides, Deputy Muton, Deputy O'Connell, Sergeant Shelton, Lieutenant Skaggs, and DOES 1 through 10, all of whom had a duty to supervise subordinate Defendant Deputies.

---

[13] *Sheriff's Payouts*, EL PASO TIMES, Apr. 10, 2017.

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

96. The aforesaid policies, customs, practices and usages described in this Complaint were the moving force that caused Plaintiff to be subjected to the unconstitutional acts of Defendant Deputies on January 6, 2022.

97. By reason of the aforesaid policies, customs, practices and usages, Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution were violated.

98. Plaintiff seeks attorney fees under this claim pursuant to 42 U.S.C. § 1988.

## **PRAYER**

WHEREFORE, PLAINTIFF requests entry of judgment in his favor and against Defendants as follows:

1. For compensatory (or general) damages, including pain and suffering, in an amount exceeding the minimum jurisdictional requirement of this Court according to proof;

2. For special damages according to proof;

3. For punitive damages as provided by federal and state law, in an amount to be proved against each individual Defendant;

4. For prejudgment interest;

5. For attorneys' fees pursuant to 42 U.S.C. § 1983 & California Civil Code § 52.1 (h);

6. For reasonable costs of this suit incurred herein; and

7. For such other and further relief as the Court may deem just, proper and appropriate.

Dated: January 5, 2024               **PLC LAW GROUP, APC**

_/s/Peter L. Carr, IV_____
Peter L. Carr, IV
Na'Shaun L. Neal
Lauren K. McRae
Attorneys for Plaintiff Eduardo Luna

PLC LAW GROUP, APC
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
T: (310) 400-5890 | F: (310) 400-5895

# **DEMAND FOR JURY TRIAL**

PLAINTIFF hereby respectfully demands a trial by jury on all issues and claims.

Dated: January 5, 2024                    **PLC LAW GROUP, APC**

*/s/Peter L. Carr, IV*
Peter L. Carr, IV
Na'Shaun L. Neal
Lauren K. McRae
Attorneys for Plaintiff Eduardo Luna

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**